## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KRISTIN PETRI, and SHERDON GREEN, *themselves and on behalf of all others similarly situated*,

       Plaintiffs,

       v.

DRIVE NEW JERSEY INSURANCE COMPANY, *a New Jersey corporation*, and PROGRESSIVE GARDEN STATE INSURANCE COMPANY, *a New Jersey corporation,*

       Defendants.

_____ /

**CASE NO.** 1:21-cv-20510-CPO-AMD

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Kristin Petri and Sherdon Green (collectively "Plaintiffs"), by and through undersigned counsel, bring this class action themselves and on behalf of all others similarly situated, against Drive New Jersey Insurance Company ("Drive NJ") and Progressive Garden State Insurance Company ("Progressive Garden State") (collectively "Defendants") and allege as follows:

### INTRODUCTION

1. This class action lawsuit arises from Defendant's deceptive, fraudulent, and unfair scheme through which Defendants systematically undervalue total-loss vehicles in order to arbitrarily reduce the ultimate payment to insureds who make total loss claims.

2. In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendants' uniform insurance policies with Plaintiffs and all

putative Class members (defined below) promise to pay for the loss, limited to the actual cash value ("ACV") of the vehicle. Attached as **Exhibit A** is a copy of Plaintiffs' Policy (the "Policy").

3.     Defendants skirt their straightforward contractual obligation by directing their third-party vendor to systematically reduce the total loss evaluations. Specifically, Defendants' third-party vendor determines the ACV of an insured total loss vehicle by comparing the for-sale price of "comparable vehicles" in the relevant market. ***After*** the vendor determines the price for "comparable vehicles," however, Defendants instruct their vendor to apply an arbitrary and baseless "Projected Sold Adjustment" reduction to each comparable vehicle. This so-called "Projected Sold Adjustment" is: (a) deceptive and unexplained; (b) contrary to appraisal standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory management practices; (d) not applied by the major competitor of Defendants' vendor Mitchell; and (e) on information and belief, not applied by Defendants and Mitchell to insureds in other states like California.   The "Projected Sold Adjustment" reduction artificially reduces the ACV calculation of the total-loss vehicle and, consequently, reduces the amount of Defendants' total loss payments to insureds.When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Defendants, to undervalue and underpay the claims by manipulating the data used to determine the ACV of the vehicles. Specifically, under their insurance policy terms and applicable New Jersey law, Defendants have a duty to pay, and they represent that they will pay, the ACV of a loss vehicle when adjusting total loss claims.

4.     Defendants' pattern and practice of undervaluing comparable and total loss vehicles when paying automobile total loss claims through the systematic use of these invalid and deceptive adjustments, which benefit the insurer at the expense of the insured, violates Defendants' policies

with their insureds, the New Jersey Insurance Code governing the adjustment of total loss claims, and the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-1, *et seq* ("NJCFA").

5.      As a result of Defendants' deceptive, fraudulent, and unfair scheme, Plaintiffs did not receive the benefit of the bargain, and thus sustained actual damages.

6.      By this action, Plaintiffs, themselves and on behalf of the Classes, seek damages and injunctive and declaratory relief.

## PARTIES

7.      Plaintiff Kristin Petri is and was domiciled at 25 S Willow Street, Gloucester City, New Jersey and was a New Jersey citizen at all times relevant to this lawsuit.

8.      Plaintiff Sherdon Green is and was domiciled at 1 William 419, Englewood, New Jersey and was a New Jersey citizen at all times relevant to this lawsuit

9.      Defendant Drive New Jersey Insurance Company is and was, at all times relevant to this lawsuit, a corporation incorporated in New Jersey, with its principal place of business at 6300 Wilson Mills Road W33 Cleveland, Ohio.  Drive New Jersey Insurance Company is authorized to conduct insurance business in New Jersey.

10.     Defendant Progressive Garden State Insurance Company is and was, at all times relevant to this lawsuit, a corporation incorporated in New Jersey, with its principal place of business at 6300 Wilson Mills Road W33 Cleveland, Ohio.  Progressive Garden State Insurance Company is authorized to conduct insurance business in New Jersey.

11.      Defendants provide insurance coverage in New Jersey for first-party property damage under collision and/or comprehensive coverage.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Defendants because Defendants are incorporated in New Jersey and direct, market, and provide its business activities throughout the State of New Jersey, and make its insurance services available to residents of New Jersey. Further, this Court has personal jurisdiction over Defendants because Defendants' tortious conduct against Plaintiffs occurred in substantial part within this District and because Defendants committed the same wrongful acts to other individuals within this judicial District, such that some of Defendants' acts have occurred within this District, subjecting Defendants to jurisdiction here.

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because at least one member of the putative classes, including Plaintiffs, is a citizen of New Jersey, and Defendants are citizens of Ohio, thus CAFA's minimal diversity requirement is met. Additionally, Plaintiffs seeks an award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiffs and the Class in an amount to be determined at trial, for each violation, which, when aggregated among a proposed class of potential thousands, exclusive of interests and costs, exceeds the $5,000,000 threshold for federal jurisdiction under the Class Action Fairness Act ("CAFA").

14.     Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and (c) because Defendants are deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events giving rise to the claim occurred in this District, and because Plaintiffs were injured in this District.

## FACTUAL ALLEGATIONS

### Defendant's Projected Sold Adjustment is Deceptive and Invalid

15.     When valuing total-loss automobile claims, insurance companies like Defendants use third party companies to determine the value of an insured's totaled vehicle. The value of the insured's total-loss vehicle serves as the baseline number for the total loss payment to an insured.

16.     In a blatant and unlawful effort to reduce their total-loss payments to insureds, Defendants, through their vendor, after the retail market value is determined, apply a deceptive and capricious "projected sold adjustment," in order to artificially decrease the market value of the comparable vehicles and, thus, decrease the amount Defendants are required to pay to their insureds under the Policy and New Jersey law.

17.     Specifically, Defendants purport to calculate the value of total-loss vehicles via a third-party vendor, Mitchell ("Mitchell"). The Mitchell system identifies the list price of comparable vehicles sold or listed for sale online. Mitchell then, at Defendants' directive, applies a deceptive and arbitrary "projected sold adjustment," which artificially reduces that value of the comparable vehicles.

18.     Upon information and belief, Defendants' "projected sold adjustment" is a blanket percentage reduction of the list price of a comparable vehicle. Rather than basing their adjustment on any actual data or evidence to support the purported consumer negotiations, the "projected sold adjustment" is arbitrarily applied as a universal percentage reduction to any vehicle in a given price range.  For example, and by way of illustration only, if a car is listed for sale at $10,000, the vehicle could be reduced by 7%. Now if an identical vehicle of the same make, model year and trim is listed at $15,000, the vehicle might be reduced by 10%, regardless of the fact that both

vehicles shared the same make, model, year, and features. There is no rational explanation for why the two identical vehicles would be subject to such varied reductions in their selling price.

19.     Defendants' "projected sold adjustment" is arbitrary and unsupportable. Without providing support or data, Defendants represent that the "projected sold adjustment" reflects some sort of average difference between a dealer list price and "what the dealer would be willing" to sell it for. *See* Ex. B at 9 ("Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)."); *see also* Ex. C at 16 (same). However, an across-the-board 3-10% reduction on used vehicles' internet prices is not typical and does not reflect market realities, and neither New Jersey Law nor the Policy permit Defendants to make this arbitrary deduction.

20.     Indeed, Defendants apply the "projected sold adjustment" without contacting the identified dealerships or considering whether the online retailer ever discounts its vehicles. Notably, in applying an across-the-board, percentage-based "projected sold adjustment" reduction, Defendants failed to consider that most used car dealerships banned price negotiation by implementing "no haggle" pricing[1] or that (as discovery will show), given certain market forces, even the few car dealers that might negotiate prices listed in-person on car lots do not negotiate the price listed online.

21.     By applying an arbitrary and unsupported "projected sold adjustment" to every comparable vehicle, Defendants fail to provide a settlement value that is "reasonable and fair for a person in that position," in clear violation of New Jersey Administrative Code § 11:3-10.4(a).

---

[1] *See* https://www.carmax.com/about-carmax (last visited June 16, 2021) ("our 'no-haggle' prices transformed car buying and selling from a stressful, dreaded event into the honest, straightforward experience all people deserve.").

22.     Certainly, the arbitrary, capricious, and meretriciously labeled "projected sold adjustment" reduction cannot be a reflection of market realities given that, even accepting Defendants' and their vendor's assertions at face value, it is based on national data, not market data.

23.     Plaintiffs do not contest Defendants' representations of the listed price of comparable vehicles. Plaintiffs do not contest the value assigned to differences in trim, condition, mileage, packages, and equipment between comparable vehicles and the total-loss vehicle. What Plaintiffs contest is that Defendants instructed Mitchell to apply an arbitrary, capricious, and invalid "projected sold adjustment" across-the-board.

24.     Notably, and for reasons unknown, Defendants do not instruct Mitchell to apply a "projected sold adjustment" to comparable vehicles in all states in which they operate. Many other insurers who use Mitchell do not instruct Mitchell to apply a "projected sold adjustment" to comparable vehicles.

25.     Defendants' Projected Sold Adjustments are deceptive. As part of a deceptive practice to lower the value of property claims, Defendant does not do what they say they will do – pay ACV"). Defendants' promise to pay ACV is a material fact intended to induce insureds to purchase its insurance policies. Yet Defendants' representation to pay ACV is false because of its use of a Project Sold Adjustment to artificially reduce the amount paid to insureds.

26.     Moreover, as described above, Defendants provide no explanation or justification for the Projected Sold Adjustment, much less the specific amount applied, other than the speculation that it "reflect[s] consumer purchasing behavior." Exhibit B at 9; Exhibit C at 16.

27.     In truth, Defendant's Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer

practices and inventory management, where list prices are priced to market to reflect the intense competition in the context of internet pricing and comparison shopping. A negotiated price discount would be highly atypical and therefore is not proper to include in determining actual cash value. The inclusion of this significant downward adjustment purportedly to "reflect consumer purchasing behavior" is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a replacement and have limited time to search out the illusory opportunity to obtain the below-market deal Defendants assume always exists without any explanation or support.

28.     Defendants' Projected Sold Adjustment is contrary to appraisal standards. There are multiple generally recognized and acceptable methodologies for determining actual cash value, including use of comparable vehicles. Defendants begin the process of valuing loss vehicles using comparative methodology but improperly deviate from that process by thumbing the scales in their own favor. Defendants document the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and make dollar adjustments accordingly. Plaintiffs do not challenge these documented adjustments. At this stage of the process, Defendants abandon the comparative methodology and apply adjustments that are contrary to proper appraisal methodologies for determining actual cash value. Appraisers use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

29.     In addition, Defendants' Projected Sold Adjustment violates the New Jersey Administrative Code, which provides that

> If the insurer elects to make a cash settlement, it must bear in mind at all times that the insured's position is that of a retail consumer and the settlement value arrived at must be reasonable and fair for a person in that position. Written, itemized valuations showing all options and deductions shall be included in the

insurer's claim file and presented to the insured no later than the date of payment. If the insurer elects to make a cash settlement, its offer, subject to applicable additions or deductions, must be one of the following plus applicable sales tax:

1. The average of the retail values for substantially similar motor vehicles as listed in the editions current for the date of loss of two valuation manuals approved by the Commissioner.

i. The average figure arrived at may be reduced or increased by considering all factors, including, but not limited to, mileage tables and the presence or absence of extras.

ii. If the destroyed vehicle included an option which is listed in one manual but not in the other, the value of the option shall not be averaged. The insured shall receive full value for the option by carrying over the amount listed to the other manual. The option carryover shall apply only in those instances where the option has not been considered by the used vehicle guide either as a separate item or included in the vehicle's base value.

iii. If a manual is submitted for approval by the Commissioner its accuracy must meet objective criteria for the values of substantially similar vehicles of at least 85 percent of all makes and models for the last 15 years and shall include all major options. A sufficient number of vehicles shall be used for each year, make and model to represent a cross-section sufficient to determine fair market values. At the time of request for approval, the source of the manual's data must be revealed to the Commissioner in a manner that can be verified by the Department. Manuals approved for use on or after January 1, 1976 are "Automobile Red Book" and "Older Car/Truck Red Book" published by Maclean Hunter Market Reports, Inc. and the "N.A.D.A. Official Used Car Guide" and "N.A.D.A. Official Older Car Guide" published by the National Automobile Dealers Used Car Guide Company.

2. A quotation obtained by the insurer for a substantially similar motor vehicle from a dealer located within a reasonable distance from the principal place of garagement of the insured vehicle. Unless otherwise agreed by the insured, a reasonable distance shall not exceed 25 miles from the principal place of garagement. The vehicle must be available for purchase by the insured and the insured must be able to purchase it for the insurer's cash offer plus applicable deductions. The insurer shall maintain in its claim file proof of the vehicle's availability and the name and location of the dealer, stock number, vehicle identification number and description of the substantially similar vehicle.

3. The fair market value of the insured vehicle, determined by using a source including a computerized database approved by the Commissioner that meets all of the following minimum criteria:

i.  The source must give primary consideration to the values of vehicles in the local market area, but if necessary to obtain a reasonable cross-section of the market, may consider vehicles in the next closest area.

ii.  The source shall produce fair market values of substantially similar vehicles for at least 85 percent of all makes and models for the last 15 years and shall include all major options.  A sufficient number of vehicles must be used for each year, make, and model to represent a cross-section of the market sufficient to determine fair market value.   iii. If the database uses several price ranges for the same model vehicle depending on the condition of the vehicle, it must clearly indicate what condition the vehicle is being valued at and define in detail the difference between such rating categories.  Documentation of the condition of the insured vehicle must be made a part of the written valuation.

iv.  At the time of request for approval the source of the database shall be revealed to the Commissioner in a manner that can be verified by the Department.

4.  If it is not possible to value the insured vehicle by using the method set forth in (a)1, 2 and 3, the insurer shall determine the retail value of the vehicle by using the best available method and shall fully explain in writing to the insured how its offer was calculated.

New Jersey Administrative Code § 11:3-10.4(a)

30.     The impropriety and arbitrariness of Defendants' Projected Sold Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions—does not apply projected sold adjustments to reduce the value of comparable vehicles. Instead, CCC Intelligent Solutions uses list prices.

31.     On information and belief, the impropriety and arbitrariness of Defendants' Projected Sold Adjustments are further demonstrated by the fact that Defendants do not apply these adjustments when valuing total losses in California. There is no justification for applying these adjustments when valuing total losses in New Jersey while not subjecting California claimants to the same negative adjustments.

32.     Plaintiffs and each member of the Classes were damaged by Defendants' application of its Projected Sold Adjustment because they were not paid the ACV they were

promised and would have received had Defendants applied proper methodologies and appraisal standards.

### FED. R. CIV. P. 9(b) ALLEGATIONS
### (Affirmative and By Omission)

33.    Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

34.    **WHO**: Defendants made material misrepresentations and/or omissions of fact by representing in their Policy they would pay ACV to insureds when, in fact, Defendants do not pay ACV and, further, Defendants omitted material information regarding the "Projected Sold Adjustment" Defendants intended to apply to routinely and arbitrarily reduce their ACV payment to pay Plaintiffs less than ACV.

35.    **WHAT**: Defendants' conduct here was, and continues to be, fraudulent because they misrepresented their promise to pay ACV and omitted and concealed the use of "Projected Sold Adjustments." Additionally, Defendants stated that "Projected Sold Adjustments" reflect marketing realities and deceives insureds into believing that there is a legitimate basis for Defendants' reduction of the ACV, when in fact, this statement is baseless and untrue.  Thus, Defendants' conduct deceived Plaintiffs and Class Members into believing that they would be paid full ACV for their total loss vehicle. Defendants knew or should have known this information is material to reasonable consumers, including Plaintiffs and Class Members in making their purchasing decisions.

36.    **WHEN**: Defendants made material misrepresentations and/or omissions during the Class periods and at the time Plaintiffs and Class Members purchased their respective Policies.

37.    **WHERE**: Defendants' Policy language was uniform and clear, it promised ACV and made no mention of Defendants' routine use of "Projected Sold Adjustments" to justify its failure to pay Plaintiffs full ACV, as promised.

38.    **HOW**: Defendants made material misrepresentations regarding their promise to pay ACV and/or failed to disclose material facts regarding the application of "Projected Sold Adjustments" to artificially lower the ACV they pay.

39.    **WHY**: Defendants made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiffs, Class Members, and other reasonable consumers to purchase Defendants' Policies, the effect of which was that Defendants profited by selling the Policies to many thousands of consumers.

INJURY: Were it not for Defendants' misrepresentations and omissions regarding their deceptive and improper adjustment, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by Defendants of ACV.  **PLAINTIFF KRISTIN PETRI'S TOTAL LOSS EXPERIENCE**

40.    Plaintiff Kristin Petri owned a 2008 Lincoln MKZ 4 door sedan that was insured under a Policy issued by Defendant Drive NJ, which was deemed a total loss on or around May 6, 2017.

41.    Plaintiff made a claim with Defendant Drive NJ for the total loss of the vehicle.

42.    Defendant Drive NJ provided a total loss valuation to Plaintiff for the total loss claim. Defendant based its offer upon a valuation report obtained from Mitchell.

43.    Defendant Drive NJ valued Plaintiff's total loss claim at $5,488.94 and paid Plaintiff that amount. The market valuation report listed values of seven different comparable vehicles and shows that Defendant and its vendor applied a "Projected Sold Adjustment" of approximately 9-10% to all comparable vehicles without itemizing or explaining the basis of each

adjustment and/or how the value of the deduction was determined. *See* Plaintiff Kristen Petri's Market Value Report at 5-8, attached as **Exhibit B**.

## PLAINTIFF SHERDON GREEN'S TOTAL LOSS EXPERIENCE

44.    Plaintiff Sherdon Green owned a 2019 Land Rover Range Rover Sport HSE 4 door utility that was insured under a Policy issued by Defendant Progressive Garden State, which was deemed a total loss on or around October 19, 2019.

45.    Plaintiff made a claim with Defendant Progressive Garden State for the total loss of the vehicle.

46.    Defendant Progressive Garden State provided a total loss valuation to Plaintiff for the total loss claim. Defendant based its offer upon a valuation report obtained from Mitchell.

47.    Defendant Progressive Garden State valued Plaintiff's total loss claim at $77,996.06 and paid Plaintiff that amount. The market valuation report listed values of ten different comparable vehicles and shows that Defendant and its vendor applied a "Projected Sold Adjustment" of approximately 3-7% to nine comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff Sherdon Green's Market Value Report at 6-15, attached as **Exhibit C**.

## CLASS ACTION ALLEGATIONS

48.    Plaintiffs bring this action respectively seeking representation of a class pursuant to Federal Rule of Civil Procedure 23.

49.    Plaintiff Kristin Petri brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

### DRIVE NJ CLASS

All New Jersey citizens insured by Drive New Jersey Insurance Company who, from the earliest allowable time through the date of a class certification order,

received a first-party total loss valuation and payment on an automobile total loss claim that deducted a "projected sold adjustment" or similar adjustment.

50.     Plaintiff Sherdon Green brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

### PROGRESSIVE GARDEN STATE CLASS

All New Jersey citizens insured by Progressive Garden State Insurance Company who, from the earliest allowable time through the date of a class certification order, received a first-party total loss valuation and payment on an automobile total loss claim that deducted a "projected sold adjustment" or similar adjustment.

51.     Excluded from the Classes are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members. Plaintiffs reserve the right to modify or amend the Class definitions during the course of this litigation.

52.     Class certification is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

53.     **Numerosity.** The members of the Classes are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are thousands of Class members, the precise number is unknown to Plaintiffs, but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

54.     **Commonality.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.  whether Defendants' practice of applying a "projected sold adjustment" when determining the market value of Class members' vehicles, and its failure to disclose same would deceive a reasonable consumer;

b.  whether Defendants' practice of applying a "projected sold adjustment" when determining the market value of Class members' vehicles would be considered material by a reasonable consumer;

c.  whether Defendants' conduct breached its contracts with Plaintiffs and the other Class members;

d.  whether Defendants' conduct breached the covenant of good faith and fair dealing with Plaintiffs and the other Class members;

e.  whether Plaintiffs and the Classes are entitled to injunctive relief; and

f.  whether Plaintiffs and the Classes are entitled to damages and the measure of damages owed to them.

55.  **Typicality.** Plaintiffs' claims are also typical of the other Class members' claims because Plaintiffs and the other Class members were all similarly affected by Defendants' deceptive application of a downward "projected sold adjustment."  Plaintiffs' claims are based upon the same legal theories as those of the other Class members. Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

56.  **Adequacy of Representation.** Plaintiffs are adequate representatives of the Classes because Plaintiffs' interests do not conflict with the interests of the other Class members whom they seek to represent, and Plaintiffs have retained counsel competent and experienced in

complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

57.    **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, such that it would be impracticable for the Class members to individually seek redress for Defendants' wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION

### VIOLATION OF THE NEW JERSEY
### CONSUMER FRAUD ACT, N.J.S.A. § 56:8-1, *et seq.*
### AGAINST DEFENDANT DRIVE NJ

58.    Plaintiff Kristin Petri incorporates by reference each allegation set forth in the preceding paragraphs.

59.    Plaintiff Kristin Petri bring this cause of action individually and on behalf of the Drive NJ Class.

60.    The New Jersey Consumer Fraud Act ("CFA") prohibits the "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby[.]" N.J.S.A. 56:8-2.

61.    Plaintiff Kristin Petri and the Drive NJ Class members are "persons" entitled to seek the protection under the CFA. N.J.S.A. 56:8-1, *et seq*.

62.    The New Jersey Insurance Code defines as unfair claim settlement practices: (1) "[M]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;" (2) "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."; (3) "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;" (4) "[a]ttempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application."; and (5) "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." N.J. Rev. Stat. §§ 17B:30-13.1(a), (f), (g), (h), (n).

63.     As alleged herein, Defendant Drive NJ, through its agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "projected sold adjustment" to comparable vehicles in order to reduce their market value and as a result, the amount of Defendant's ACV payment to insureds, as detailed above.

64.     By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "projected sold adjustment" to comparable vehicles, as detailed above, Defendant Drive NJ engaged in one or more unfair or deceptive business practices prohibited by the New Jersey CFA.

65.     Defendant Drive NJ's misrepresentations and omissions regarding its application of an arbitrary "projected sold adjustment" to comparable vehicles were made to Plaintiff and the Drive NJ Class members in a uniform manner.

66.     Defendant Drive NJ's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Drive NJ Class members, about Defendant's application of an arbitrary "projected sold adjustment" to comparable vehicles in order to reduce the amount of Defendant's ACV payment to its insureds.

67.     The facts regarding Defendant Drive NJ's application of an arbitrary "projected sold adjustment" to comparable vehicles that Defendants knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Drive NJ Class members,

who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

68.     Plaintiff and the Drive NJ Class members had no way of discerning that Defendant Drive NJ's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

69.     Defendant Drive NJ had an ongoing duty to Plaintiff and the Drive NJ Class members to refrain from engaging in unfair or deceptive practices under the CFA in the course of its business. Specifically, Defendant owed Plaintiff and Class members a duty to disclose all the material facts concerning its application of an arbitrary "projected sold adjustment" to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiff and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

70.     Plaintiff and the Drive NJ Class members were aggrieved by Defendant Drive NJ's violations of the CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "projected sold adjustment" to comparable vehicles, including that the "projected sold adjustment" is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's ACV payments under the policy.

71.     Plaintiff and the Drive NJ Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures

to disclose material facts regarding its application of an arbitrary "projected sold adjustment" to comparable vehicles.

72.     Had Defendant Drive NJ not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased insurance coverage from Defendant, or would not have paid the same price for such coverage and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

73.     Defendant Drive NJ's violations of the CFA present a continuing risk to Plaintiff and the Drive NJ Class members.

74.     Plaintiff and the Drive NJ Class members seek an order enjoining Defendant Drive NJ's unfair and deceptive acts or practices in violation of the CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the CFA.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE NEW JERSEY
CONSUMER FRAUD ACT N.J.S.A. § 56:8-1, *et seq*
AGAINST PROGRESSIVE GARDEN STATE**

75.     Plaintiff Sherdon Green incorporates by reference each allegation set forth in the preceding paragraphs, other than those contained in the preceding Cause of Action.

76.     Plaintiff Sherdon Green brings this cause of action individually and on behalf of the Progressive Garden State Class.

77.     The New Jersey Consumer Fraud Act ("CFA") prohibits the "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the

subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby[.]" N.J.S.A. 56:8-2.

78.     Plaintiff Sherdon Green and the Progressive Garden State Class members are "persons" entitled to seek the protection under the CFA. N.J.S.A. 56:8-1, *et seq.*

79.     The New Jersey Insurance Code defines as unfair claim settlement practices: (1) "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."; (2) "[a]ttempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application."; and (3) "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." N.J. Rev. Stat. §§ 17B:30-13.1(f), (h), (n).

80.     As alleged herein, Defendant Progressive Garden State, through its agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "projected sold adjustment" to comparable vehicles in order to reduce their market value and as a result, the amount of Defendant's ACV payment to insureds, as detailed above.

81.     By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "projected sold adjustment" to comparable vehicles, as detailed above, Defendant Progressive Garden State engaged in one or more unfair or deceptive business practices prohibited by the New Jersey CFA.

82.     Defendant Progressive Garden State's misrepresentations and omissions regarding its application of an arbitrary "projected sold adjustment" to comparable vehicles were made to Plaintiff and the Progressive Garden State Class members in a uniform manner.

83.     Defendant Progressive Garden State's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Progressive Garden State Class members, about Defendant's application of an arbitrary "projected sold adjustment" to comparable vehicles in order to reduce the amount of Defendant's ACV payment to its insureds.

84.     The facts regarding Defendant Progressive Garden State's application of an arbitrary "projected sold adjustment" to comparable vehicles that Defendants knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Progressive Garden State Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

85.     Plaintiff and the Progressive Garden State Class members had no way of discerning that Defendant Progressive Garden State's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

86.     Defendant Drive NJ had an ongoing duty to Plaintiff and the Progressive Garden State Class members to refrain from engaging in unfair or deceptive practices under the CFA in the course of its business. Specifically, Defendant owed Plaintiff and Class members a duty to

disclose all the material facts concerning its application of an arbitrary "projected sold adjustment" to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiff and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

87.     Plaintiff and the Progressive Garden State Class members were aggrieved by Defendant Progressive Garden State's violations of the CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "projected sold adjustment" to comparable vehicles, including that the "projected sold adjustment" is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's ACV payments under the policy.

88.     Plaintiff and the Progressive Garden State Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its application of an arbitrary "projected sold adjustment" to comparable vehicles.

89.     Had Defendant Progressive Garden State not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased insurance coverage from Defendant, or would not have paid the same price for such coverage and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

90.     Defendant Progressive Garden State's violations of the CFA present a continuing risk to Plaintiff and the Progressive Garden State Class members.

91.     Plaintiff and the Progressive Garden State Class members seek an order enjoining Defendant Progressive Garden State's unfair and deceptive acts or practices in violation of the CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the CFA.

### THIRD CAUSE OF ACTION

### BREACH OF CONTRACT
### AGAOMST DEFENDANT DRIVE NJ

92.     Plaintiff Kristin Petri incorporates by reference each allegation set forth in the preceding paragraphs, other than those contained in the preceding Causes of Action.

93.     Plaintiff Kristin Petri brings this claim individually and on behalf of the Drive NJ Class.

94.     Plaintiff and each of the other Drive NJ Class members were insured under a policy issued by Defendant Drive NJ, as described herein.

95.     Plaintiff and each of the other Drive NJ Class members' insurance contracts are governed by New Jersey law.

96.     Plaintiff and each of the other Drive NJ Class members made claims under their insurance contracts, which Defendant Drive NJ determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

97.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant Drive NJ purported to pay Plaintiff and each of the other Drive NJ Class members the ACV of their totaled vehicles.

98.     Defendant Drive NJ, however, failed to pay the ACV of Plaintiff's and Class member's vehicles because Defendant applied an arbitrary and capricious "projected sold

adjustment" to comparable vehicles in order to reduce their market value and, as a result, Defendant's ACV payment to insureds.

99.     Thus, Defendant Drive NJ failed to pay Plaintiff and each of the other Drive NJ Class members the promised full ACV of their total loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

100.    As a result of the contractual breaches, Plaintiff and each of the other Drive NJ Class members have been damaged and are entitled to damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

101.    All conditions precedent have been satisfied.

## FOURTH CAUSE OF ACTION

### BREACH OF CONTRACT
### AGAINST DEFENDANT PROGRESSIVE GARDEN STATE

102.    Plaintiff Sherdon Green incorporates by reference each allegation set forth in the preceding paragraphs, other than those contained in the preceding Causes of Action.

103.    Plaintiff Sherdon Green brings this claim individually and on behalf of the Progressive Garden State Class.

104.    Plaintiff and each of the other Progressive Garden State Class members were insured under a policy issued by Defendant Progressive Garden State, as described herein.

105.    Plaintiff and each of the other Progressive Garden State Class members' insurance contracts are governed by New Jersey law.

106.    Plaintiff and each of the other Progressive Garden State Class members made claims under their insurance contracts, which Defendant Progressive Garden State determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

107.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant Progressive Garden State purported to pay Plaintiff and each of the other Progressive Garden State Class members the ACV of their totaled vehicles.

108.    Defendant Progressive Garden State, however, failed to pay the ACV of Plaintiff's and Class member's vehicles because Defendant applied an arbitrary and capricious "projected sold adjustment" to comparable vehicles in order to reduce their market value and, as a result, Defendant's ACV payment to insureds.

109.    Thus, Defendant Progressive Garden State failed to pay Plaintiff and each of the other Progressive Garden State Class members the promised full ACV of their total loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

110.    As a result of the contractual breaches, Plaintiff and each of the other Progressive Garden State Class members have been damaged and are entitled to damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

111.    All conditions precedent have been satisfied.

### FIFTH CAUSE OF ACTION

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### AGAINST DEFENDANT DRIVE NJ

112.    Plaintiff Kristin Petri incorporates by reference each allegation set forth in the preceding paragraphs, other than those contained in the preceding Causes of Action.

113.    Plaintiff Kristin Petri brings this claim individually and on behalf of the Drive NJ Class.

114.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each

other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

115.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

116.    Under the Policy, Defendant Drive NJ had discretion to perform its obligations under the contract, including its obligation to determine the ACV of an insured's total loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its ACV payment to insureds, as alleged herein.

117.    As such, Defendant Drive NJ breached the covenant of good faith and fair dealing by, *inter alia*:

    a.    Intentionally applying projected sold adjustments to undervalue comparable vehicles, and, in turn, insureds' total loss vehicles;

    b.    Failing to pay insureds the actual cash value of their total loss vehicles; Interpreting the terms and conditions of their insurance policies in an unreasonable manner, which is inconsistent with applicable law, solely in an effort to understate the fair market value of total loss vehicles and avoid paying insureds the actual cash value on their total loss claims; and

    c.    Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

118.    Defendant Drive NJ's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Drive NJ Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a projected sold adjustment.

## SIXTH CAUSE OF ACTION

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST PROGRESSIVE GARDEN STATE

119.    Plaintiff Sherdon Green incorporates by reference each allegation set forth in the preceding paragraphs, other than those contained in the preceding Causes of Action.

120.    Plaintiff Sherdon Green brings this claim individually and on behalf of the Progressive Garden State Class.

121.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

122.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

123.    Under the Policy, Defendant Progressive Garden State had discretion to perform its obligations under the contract, including its obligation to determine the ACV of an insured's total loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations

of the parties, specifically, to arbitrarily reduce the amount of its ACV payment to insureds, as alleged herein.

124.    As such, Defendant Progressive Garden State breached the covenant of good faith and fair dealing by, *inter alia*:

        d.    Intentionally applying projected sold adjustments to undervalue comparable vehicles, and, in turn, insureds' total loss vehicles;

        e.    Failing to pay insureds the actual cash value of their total loss vehicles; Interpreting the terms and conditions of their insurance policies in an unreasonable manner, which is inconsistent with applicable law, solely in an effort to understate the fair market value of total loss vehicles and avoid paying insureds the actual cash value on their total loss claims; and

        f.    Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

125.    Defendant Progressive Garden State's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Progressive Garden State Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a projected sold adjustment.

## SEVENTH CAUSE OF ACTION

## DECLARATORY JUDGMENT
## AGAINST DEFENDANT DRIVE NJ

126.    Plaintiff Kristin Petri incorporates by reference each allegation set forth in the preceding paragraphs, other than those contained in the preceding Causes of Action.

127.    Plaintiff Kristin Petri brings this claim individually and on behalf of the Drive NJ Class.

128.    A dispute between Plaintiff and the Drive NJ Class and Defendant Drive NJ is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

129.    Plaintiff Kristin Petri, individually and on behalf of the Drive NJ Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total loss claims by first-party insureds, it is a breach of Defendant Drive NJ's insurance contract, as well as a violation of New Jersey law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by projected sold adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

130.    Defendant Drive NJ's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Drive NJ Class.

131.    As a result of these breaches of contract, Plaintiff and the proposed Drive NJ Class members have been injured.

### EIGHTH CAUSE OF ACTION

### DECLARATORY JUDGMENT
### AGAINST DEFENDANT PROGRESSIVE GARDEN STATE

132.    Plaintiff Sherdon Green incorporates by reference each allegation set forth in the preceding paragraphs, other than those contained in the preceding Causes of Action.

133.    Plaintiff Sherdon Green brings this claim individually and on behalf of the Progressive Garden State Class.

134.     A dispute between Plaintiff and the Progressive Garden State Class and Defendant Progressive Garden State is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

135.     Plaintiff Sherdon Green, individually and on behalf of the Progressive Garden State Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total loss claims by first-party insureds, it is a breach of Defendant Drive NJ's insurance contract, as well as a violation of New Jersey law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by projected sold adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

136.     Defendant Progressive Garden State's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Progressive Garden State Class.

137.     As a result of these breaches of contract, Plaintiff and the proposed Progressive Garden State Class members have been injured.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, themselves and on behalf of all others similarly situated, respectfully seek judgement in Plaintiffs' favor and in favor of the Classes as follows:

A.      An Order certifying this action as a Class Action and appointing Plaintiff as Class Representatives and Plaintiffs' counsel as Class Counsel;

B.      An award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiffs and the Classes in an amount to be determined at trial, plus interest, in accordance with law;

C.      Disgorgement of Defendants' profits;

D.      Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendants described herein;

E.      An award Plaintiffs' and the Classes' costs of suit, including reasonable attorneys' fees as provided by law; and

F.      An award such further and additional relief as is necessary to redress the harm caused by Defendants' unlawful conduct and as the Court may deem just and proper under the circumstances.

## DESIGNATION OF TRIAL COUNSEL

## CERTIFICATION

Pursuant to R. 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.  I further certify that I know of no party who should be joined in the action at this time.


Dated: March 7, 2022                                          Respectfully submitted,

                                                                             **DAPEER LAW, P.A.**

                                                                             _/s/ Rachel Edelsberg_
                                                                             Rachel Edelsberg, Esq.

Jersey Bar No. 039272011
3331 Sunset Avenue
Ocean, New Jersey 07712
Telephone: 305-610-5223
rachel@dapeer.com

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq. *(pro hac vice to be filed)*
scott@edelsberglaw.com
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq. *(pro hac vice to be filed)*
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, Florida 33132
Telephone: 305-479-2299

**NORMAND LAW, PLLC**
Edmund A. Normand  *(pro hac vice to be filed)*
 Jacob Phillips  *(pro hac vice to be filed)*
62 West Colonial Street, Suite 209
Orlando, Florida 32814
Telephone: 407-603-6031
ed@ednormand.com
jacob@ednormand.com

*Counsel for Plaintiffs and the Class*