UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KRISTIN PETRI and SHERDON
GREEN, *themselves and on behalf of all
others similarly situated*,

        Plaintiffs,

    v.

DRIVE NEW JERSEY INSURANCE
COMPANY and PROGRESSIVE
GARDEN STATE INSURANCE
COMPANY,

        Defendants.

No. 1:21-cv-20510

OPINION

**<u>APPEARANCES</u>**:

Rachel N. Edelsberg
DAPEER LAW, P.A.
3331 Sunset Avenue
Ocean, NJ 07712

Amy L. Judkins, *pro hac vice*
NORMAND PLLC
3165 McCrory Place, Ste. 175
Orlando, FL 32803

    *On behalf of Plaintiffs and the Proposed Class*.

Craig Carpenito
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036

Jeffrey S. Cashdan, *pro hac vice*
Zachary A. McEntyre, *pro hac vice*
J. Matthew Brigman, *pro hac vice*
Daniel S. Sanders III, *pro hac vice*
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309

Julia C. Barrett, *pro hac vice*
KING & SPALDING LLP
500 W. 2nd Street
Austin, Texas 78701

    *On behalf of Defendants.*

**O'HEARN, District Judge.**

    This matter comes before the Court on the Motion to Dismiss, (ECF No. 32), filed by Defendants Drive New Jersey Insurance Company ("Drive NJ") and Progressive Garden State Insurance Company ("Progressive" and collectively with Drive NJ, "Defendants"). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendants' Motion is **GRANTED IN PART and DENIED IN PART**.

    I.    <u>**BACKGROUND**</u>

    Plaintiffs Kristin Petri and Sherdon Green ("Plaintiffs") are two New Jersey drivers who secured auto insurance policies through Drive NJ and Progressive, respectively. (Am. Compl., ECF No. 27, ¶¶ 7, 8, 40, 44). Among other terms, Plaintiffs' insurance policies included coverage in the event of the "total loss" of their vehicles—i.e., where, after an accident or some other cause, repair of the vehicles would be impossible or uneconomical. (Am. Compl., ECF No. 27, ¶ 2). Defendants warrant in their standard insurance policies that they will pay the actual cash value ("ACV") for insureds' loss of totaled vehicles. (Am. Compl., ECF No. 27, ¶ 2).

    To calculate the ACV of a totaled vehicle, Defendants purportedly rely on a third-party vendor, "Mitchell," to analyze the list prices of comparable vehicles sold or listed for sale online.[1]

---

[1] Although not specifically alleged in the Amended Complaint, the Court notes that the parties appear to agree that the specific software program used by Mitchell to conduct its analyses ("the Mitchell Software") has been approved for use by insurance companies by the New Jersey Department of Banking and Insurance ("DOBI"). (Plas.' Br., ECF No. 34 at 17–20).

(Am. Compl., ECF No. 27, ¶ 17). According to Plaintiff, after Mitchell determines the retail market value of the totaled vehicles based on the available pricing data, Defendants direct the vendor to apply a "projected sold adjustment" ("PSA") to decrease their liability artificially. (Am. Compl., ECF No. 27, ¶ 18). The PSA is a flat percentage reduction of the list price that is meant to reflect "some sort of average difference between a dealer list price and 'what the dealer would be willing' to sell it for." (Am. Compl., ECF No. 27, ¶¶ 18–19; Exh. B, ECF No. 27-2 at 9; Exh. C, ECF No. 27-3 at 16).

Plaintiff alleges that these reductions are arbitrary, do not reflect market realities, violate New Jersey law, and contradict the policies' plain terms. (Am. Compl., ECF No. 27, ¶¶ 19–22, 29). Plaintiffs further allege that the application of the PSA is inconsistent with the practices of "[m]any other insurers who use Mitchell" and is "contrary to appraisal standards." (Am. Compl., ECF No. 27, ¶¶ 24, 27–28). Moreover, according to Plaintiffs, Mitchell's primary competitor, CCC Intelligent Solutions does not apply a PSA in its valuations, and Defendants themselves "do not apply these adjustments when valuing total losses in California." (Am. Compl., ECF No. 27, ¶¶ 30–31). Plaintiffs suggest that Defendants' application of the PSA proves false the representation in their standard policies to pay the ACV for totaled vehicles—a material misrepresentation "intended to induce insureds to purchase [their] insurance policies." (Am. Compl., ECF No. 27, ¶ 25).

Plaintiff Kristin Petri owned a 2008 Lincoln MKZ four-door sedan that was insured by Drive NJ and deemed a total loss on or around May 6, 2017. (Am. Compl., ECF No. 27, ¶ 40). Drive NJ valued Petri's total loss claim at $5,488.94 and paid her that amount. (Am. Compl., ECF No. 27, ¶ 40). However, the "market valuation report" for Petri's vehicle "shows that Defendant and its vendor applied a [PSA] of approximately 9–10% to all comparable vehicles without

3

itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined." (Am. Compl., ECF No. 27, ¶ 43; Exh. B, ECF No. 27-2 at 5–8).

Plaintiff Sherdon Green had a similar experience. Green owned a 2019 Land Rover Range Rover Sport HSE four-door utility vehicle that was insured by Progressive and deemed a total loss on or around October 19, 2019. (Am. Compl., ECF No. 27, ¶ 44). Progressive valued Plaintiff's total loss claim at $77,996.06 and paid him that amount. (Am. Compl., ECF No. 27, ¶ 44). However, Green's market valuation report "shows that [Progressive] and its vendor applied a [PSA] of approximately 3–7% to nine comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined." (Am. Compl., ECF No. 27, ¶ 47; Exh. B, ECF No. 27-3 at 6–15).

Plaintiffs now seek to represent themselves and "[a]ll New Jersey citizens insured by [Defendants] who, from the earliest allowable time through the date of a class certification order, received a first-party total loss valuation and payment on an automobile total loss claim that deducted a [PSA] or similar adjustment" to recover the difference between the insurance benefits they received and what they believe to be the ACVs for their vehicles. (Am. Compl., ECF No. 27, ¶¶ 48–50).

II. **PROCEDURAL HISTORY**

Plaintiffs initiated this putative class action by filing an eight-count Complaint on December 15, 2021, alleging Defendants' violation of the New Jersey Consumer Fraud Act ("NJCFA" or "the Act"), N.J. STAT. ANN. § 56:8-1, *et seq*.; breach of contract; and breach of the covenant of good faith and fair dealing; and seeking declaratory judgment against them. (ECF No. 1). In response, Defendants filed a Motion to Dismiss. (ECF No. 18). Rather than oppose that Motion, Plaintiffs filed an Amended Complaint on March 7, 2022. (ECF No. 27). The present

4

Motion to Dismiss for failure to state a claim followed, (ECF No. 32), to which Plaintiffs responded, (ECF No. 34), and Defendants replied in further support, (ECF No. 37).

### III.   LEGAL STANDARD

To state a claim, a complaint only needs to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although "short and plain," this statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations, alterations, and citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* (citations omitted). Rather, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 570.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, because they are no more than "the-defendant-unlawfully-harmed-me accusation[s]," are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678; *Malleus*, 641 F.3d at 563. Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). The court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). If any other matters outside the pleadings are presented and the court does not exclude them, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. FED. R. CIV. P. 12(d).

## IV.  DISCUSSION

Defendants have moved under Federal Rule 12(b)(6), (ECF No. 32), to dismiss all eight Counts of Plaintiffs' Amended Complaint, which comprises their claims for (a) violations of the NJCFA ("Counts I and II"); (b) breach of contract ("Counts III and IV"); (c) breach of the covenant of good faith and fair dealing ("Counts V and VI"); and (d) declaratory judgment ("Counts VII and VIII"), (Am. Compl., ECF No. 27). This Court has jurisdiction under 28 U.S.C. § 1332(d)(2). For the reasons that follow, the Court concludes that only Plaintiffs' breach of contract claims—Counts III and IV—survive Rule 12(b)(6) scrutiny.

### A.  NJCFA ("Counts I and II")

The Court addresses first Counts I and II, Plaintiffs' claims under the NJCFA. The NJCFA provides, in relevant part, that—

> [t]he act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]

6

N.J. STAT. ANN. § 56:8-2; *see also* N.J. STAT. ANN. § 56:8-4 (empowering the Attorney General of New Jersey to promulgate regulations as to what further constitutes an unlawful practice); N.J. STAT. ANN. § 56:8-19 (providing a private right of action). To state a claim under the Act, a plaintiff must allege that a "defendant [(i)] engaged in an unlawful practice that [(ii)] caused [(iii)] an ascertainable loss to the plaintiff." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462–65 (N.J. 1994)). Because these claims necessarily involve allegations of fraud, they also must be pled with particularity under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. FED. R. CIV. P. 9(b); *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) ("It is well-established that NJCFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)."). But before even considering the elements of a claim or the particularity of a plaintiff's allegations, courts must ask whether the NJCFA applies to the specific facts as alleged.

New Jersey courts have recognized that although the NJCFA must be interpreted "broadly to protect consumers from a wide variety of abhorrent deceptive practices, it has meaningful limits." *Myska v. N.J. Mfrs. Ins. Co.*, 114 A.3d 761, 776 (N.J. App. Div. 2015) (quotations omitted) (quoting *D'Agostino v. Maldonado*, 78 A.3d 527, 538 (N.J. 2013)). One of those limits arises in the context of insurance: "it is well settled that 'payment of insurance benefits is not subject to the [NJCFA].'" *Veyhl v. State Farm Fire & Cas. Co.*, No. 21-10112, 2021 WL 6062304, at *4 (D.N.J. Dec. 22, 2021) (quoting *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998)). That is not to say, however, that the NJCFA can't ever reach the insurance market.

Courts have carved out at least two circumstances in which the NJCFA applies in the context of insurance. First, the Supreme Court of New Jersey has held that the Act applies to fraudulent practices in "*the sale* of insurance policies as goods and services that are marketed to

consumers." *Lemelledo v. Beneficial Mgmt. Corp.*, 696 A.2d 546, 551 (N.J. 1997) (emphasis added). Second, the Third Circuit has recognized that in addition to insurance sales, "[t]he [NJ]CFA covers . . . fraud in the *subsequent performance* [of insurance policies] (where the seller at some point elects not to fulfill its obligations)." *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 266 (3d Cir. 2007) (emphasis added).

Recent case law provides very few examples of what "fraud in the subsequent performance" of an insurance policy looks like, but two bear mention. First, in *Weiss*, the alleged fraud related to the insurer's discontinuation of previously authorized benefit payments without "receiv[ing] or examin[ing] [plaintiff's] hospital records" or ordering the "tests that would make clear the severity of his injury." *Id.* at 257. Second, in *Alpizar-Fallas v. Favero*, the Third Circuit held that a plaintiff adequately pled an NJCFA claim when she alleged a defendant falsely represented to the her that she had to sign a document to facilitate the approval of her claim, but in truth, the document was a broad waiver of claims. 908 F.3d 910, 918 (3d Cir. 2018). These two cases effectively mark the extent to which the NJCFA has been applied to insurers' performance under a policy.

Bearing all this in mind, the task for courts analyzing NJCFA claims is to distinguish between those claims to which the Act applies—i.e., those alleging fraud in the sale or performance of insurance policies—and those to which it doesn't: those that allege "a mere refusal to pay benefits." *Veyhl*, 2021 WL 6062304, at *4 (quotations omitted); *Lemelledo*, 696 A.2d at 551. Although the question may be close, the Court finds that Plaintiffs' claims fall in the latter group and must be dismissed.

First, as to the sale of their policies, aside from some passing, conclusory statements, (Am. Compl., ECF No. 27, ¶¶ 25, 35, 39, 67, 72, 84, 89), Plaintiffs do not adequately allege that

8

Defendants committed fraud—by misrepresentation or omission—during the marketing or sales processes. Although Plaintiffs allege that they "would not have purchased insurance coverage from Defendant[s], or would not have paid the same price for such coverage," (Am. Compl., ECF No. 72, 89), they fail to provide any factual support for this assertion. When did Plaintiffs purchase their policies? From whom? What, precisely, was represented to them during the marketing and sales process?[2] Why was the calculation of ACV material to their purchase decision? That the Court is left asking these questions evidences that Plaintiffs' allegations are inadequate to state an NJCFA claim under a fraud-in-the-sale theory. At the very least, they do not meet Rule 9(b)'s heightened standard. *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (dismissing an NJCFA claim for lack of particularized allegations under an affirmative misrepresentation theory); *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 08-01057, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008) (dismissing an NJCFA claim for lack of particularized allegations under a knowing omission theory). Accordingly, the Court does not find that the NJCFA covers the Defendants' conduct as alleged by Plaintiff under a fraud-in-the-sale theory.

Second, the Court does not view Plaintiffs' allegations as akin to those in *Weiss* or *Alpizar-Fallas*, suggesting Defendants' fraud in the subsequent performance of the insurance policies.

---

[2] Plaintiffs allege that the misrepresentations and omission were made within the terms of the policies themselves. (Am. Compl., ECF No. 27, ¶¶ 35–39). But, really, allegations of a failure by Defendants to comply with the terms of the policies suggest a *breach* of that contract, not necessarily an unlawful fraudulent practice under the NJCFA. A "breach of contract is not per se unfair or unconscionable and does not alone violate the Consumer Fraud Act." *Palmucci v. Brunswick Corp.*, 710 A.2d 1045, 1049 (N.J. App. Div. 1998). Without pleading additional facts surrounding the marketing and sales processes of their policies, Plaintiffs fail to differentiate their NJCFA claims from ordinary contract breach claims. *See Nationwide Mut. Ins. Co. v. Caris*, 170 F. Supp. 3d 740, 746 (D.N.J. 2016) (dismissing an NJCFA claim where "there [we]re no allegations that Nationwide fraudulently procured the purchase of the insurance policies issued").

Plaintiffs have made no allegation that Defendants have ceased paying benefits they had previously authorized based on some untoward scheme, like the defendants in *Weiss*. 482 F.3d at 257. Nor have Plaintiffs alleged that Defendants induced them to sign any documents waiving claims or otherwise altering their coverage based on false representations as in *Alpizar-Fallas*. 908 F.3d at 918. Rather, the fraud Plaintiffs allege Defendants committed in performance under the policies is failing to pay the (full) insurance benefits Plaintiffs allege they were owed under the contract of insurance. (Am. Compl., ECF No. 27, ¶¶ 1–3, 16, 63, 80). But that is precisely the type of claim New Jersey courts have made clear that the NJCFA does not reach. *See Myska*, 114 A.3d at 776. Plaintiffs point to no cases from New Jersey courts or within the Third Circuit suggesting any other conclusion. Thus, the Court finds that the NJCFA covers the Defendants' conduct as alleged by Plaintiff under a fraud-in-subsequent-performance theory.

In sum, Plaintiffs do not adequately allege that Defendants committed fraud in the sale or performance of their insurance policies. Instead, they have alleged that Defendants have failed to pay the full value of the insurance benefits to which they are entitled. These claims fall plainly outside the reach of the NJCFA. Plaintiffs have thus failed to state a claim under the Act and Counts I and II must be dismissed.

### B. Breach of Contract ("Counts III and IV")

The Court turns next to Counts III and IV, Plaintiffs' breach of contract claims. "To establish a breach of contract claim under New Jersey law, a plaintiff must show that: (1) 'the parties entered into a valid contract,' (2) 'the defendant failed to perform his obligations under the contract,' and (3) she 'sustained damages as a result.'" *E.g.*, *Ensey v. Gov't Employers Ins. Co.*, 663 F. App'x 172, 176 (3d Cir. 2016) (quoting *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. App.

Div. 2007)).[3] The parties do not appear to dispute that they entered into a valid contract; rather, Defendants argue that Plaintiffs' allegations regarding Defendants' use of the Mitchell Software do not constitute a breach of contract claim, and that even if they did, Plaintiffs have failed to plead adequate damages.[4] (Defs.' Br., ECF No. 32-2 at 20–22). The Court disagrees.

The analysis here is simple. Plaintiffs disclaim the argument that Defendants' use of the Mitchell Software—which, both parties agree, has been approved by the DOBI—amounts to a *per se* breach of contract. (Plas.' Br., ECF No. 34 at 17–20). Rather, they allege *throughout* the Amended Complaint that Defendants were obligated under their policies to pay the ACV of their totaled vehicles but failed to do so by applying the PSA—definitionally, a downward adjustment. (ECF No. 27, ¶¶ 2–4, 16, 21, 92–111). In other words, Defendants were obligated to pay a yet-to-be-determined amount of money but paid less than that amount. These allegations are about as close to a contract law casebook's definition of breach as one could get. As such, they are sufficient with respect to the second element of a contract breach claim.

As for the damages element, although Plaintiffs' allegations perhaps could have been more precise, it seems sufficient at the motion to dismiss stage for Plaintiffs to allege, as they do, that the ACV for their vehicles was greater than the amount Defendants paid. (Am. Compl., ECF No. 27, ¶¶ 43, 47). Indeed, Plaintiffs specifically allege that their vehicles were subject to downward adjustments from comparable vehicles' prices of 9–10% in Petri's case and 3–7% for Green. (Am. Compl., ECF No. 27, ¶¶ 43, 47). Obviously, the damages Plaintiff seek are these differences— numbers which will become more precise through the discovery process.

---

[3] There appears to be no dispute between the parties—at least at this stage—that New Jersey law governs this case. The Court analyzes Plaintiffs' claims accordingly.

[4] Notably, Rule 9(b)'s heightened pleading standard does *not* apply to breach of contract claims because they do not involve "alleg[ations] of fraud of mistake." FED. R. CIV. P. 9(b).

11

Having adequately alleged valid contracts, Defendants' failure to meet their obligations under those contracts, and resulting damages, Plaintiffs have stated a claim for breach of contract under New Jersey law. Counts III and IV of the Amended Complaint therefore survive.

### C.  Breach of the Covenant of Good Faith and Fair Dealing ("Counts V and VI")

Next, the Court addresses Counts V and VI of the Amended Complaint, Plaintiffs' claims for breach of the covenant of good faith and fair dealing. All contracts under New Jersey law contain an implied covenant of good faith and fair dealing. *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 417 (D.N.J. 2021) (citing *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002)). "Where, as here, an insurance contract is at issue, a claim for breach of the implied covenant of good faith and fair dealing is 'tantamount' to a claim for 'bad faith.'" *Veyhl*, 2021 WL 6062304, at *2. Bad faith claims require plaintiffs to allege "the absence of a reasonable basis for denying benefits of the policy." *Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 400 (D.N.J. 2000) (quoting *Pickett v. Lloyd's*, 621 A.2d 445, 455 (N.J. 1993)). But critically, "[i]n . . . New Jersey, a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract." *Hahn v. OnBoard LLC*, No. 09-03639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009) (citing *Wade*, 798 A.2d at 1259–60); *see also Veyhl*, 2021 WL 6062304, at *2. That is precisely the case here.

Plaintiffs allege that "to the extent Defendants possess discretion in calculating the vehicles' market value, they must exercise such discretion in good faith." (Plas.' Br., ECF No. 34 at 22; Am. Compl., ECF No. 27, ¶¶ 112–25). Put differently, Plaintiffs suggest that in failing to calculate and pay the vehicles' market value properly, Defendants acted in bad faith. But this is the exact same alleged conduct on which Plaintiffs rely to state their breach of contract claims.

(Am. Compl., ECF No. 27, ¶¶ 97–99, 107–09, 117, 124). New Jersey law does not allow both sets of claims to proceed. *E.g.*, *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F.Supp.3d 449, 463 (D.N.J. 2020). Because Plaintiffs' claims for breach of the covenant of good faith and fair dealing merely duplicate their breach of contract claims, the good faith and fair dealing claims fail. Counts V and VI must be dismissed.

### D. Declaratory Judgment ("Counts VII and VIII")

Finally, the Court turns to Plaintiffs' claims seeking declaratory judgment under 28 U.S.C. § 2201(a), Counts VII and VIII. Specifically, Plaintiffs seek a declaration that—

> in paying total loss claims by first-party insureds, it is a breach of [Defendants'] insurance contract[s], as well as a violation of New Jersey law, for Defendant[s] to base the valuation and payment of claims on values of comparable vehicles that have been reduced by projected sold adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

(Am. Compl., ECF No. 27, ¶¶ 129, 135). But as, Defendants rightly point out, (Defs.' Br., ECF No. 32-2 at 24), "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct[; n]or is declaratory judgment meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (citations omitted). That is precisely what Plaintiffs ask for here: a declaration from this Court that Defendants' past behavior is a breach of their contracts and a violation of law. Declaratory judgment cannot be granted for this purpose. And in any event, these issues will be adjudicated by way of Plaintiffs' breach of contract claims; any declaratory relief would be duplicative. *AV Design Servs., LLC v. Durant*, No. 19-08688, 2021 WL 1186842, at *12–13 (D.N.J. Mar. 30, 2021) (collecting case dismissing declaratory judgment claims as duplicative of breach of contract claims). Accordingly, because declaratory judgment

would be both inappropriate and duplicative, Counts VII and VIII must be dismissed.[5]

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**. (ECF No. 32). Defendants' Motion is **GRANTED** as to Counts I, II and V through VIII of the Amended Complaint; those claims are **DISMISSED WITHOUT PREJUDICE**. Defendants' Motion is **DENIED** as to Counts III and IV. An appropriate Order accompanies this Opinion.

*[signature]*
**CHRISTINE P. O'HEARN**
**United States District Judge**

---

[5] This analysis would be entirely different if Plaintiffs were seeking *prospective* relief. Although this case has not yet progressed to the class certification stage, the Court notes that Plaintiffs' proposed classes include, "[a]ll New Jersey citizens insured by [Defendants] who, from the earliest allowable time through the date of a class certification order, received a first-party total loss valuation and payment on an automobile total loss claim that deducted a 'projected sold adjustment' or similar adjustment." (Am. Compl., ECF No. 27, ¶¶ 49–50). By defining their proposed classes this way, Plaintiffs make clear that they are seeking relief for those who allegedly have *already been* underpaid for their totaled vehicles. If they were, for example, seeking to represent *all* drivers insured by Defendants and were seeking a declaration that it would be unlawful and a breach of contract for Defendants to apply the PSA to *future* totaled-vehicle claims, declaratory relief might be appropriate. But because they are not, and instead only seek relief for alleged past conduct, their declaratory judgment claims must be dismissed.