[ECF No. 75]

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **KRISTIN PETRI, et al.,**<br><br>                          **Plaintiffs,**<br><br>     **v.**<br><br>**DRIVE NEW JERSEY INSURANCE**<br>**COMPANY, et al.,**<br><br>                    **Defendants.** | **Civil No. 21-20510 (CPO/EAP)** |

## OPINION

This matter comes before the Court on Defendants' Motion for Leave to File an Amended Answer to add counterclaims against one of two named Plaintiffs in this putative class action. *See* ECF No. 75 ("Defs.' Mot."). Plaintiffs oppose the Motion. *See* ECF No. 88 ("Pls.' Opp."). Defendants filed a reply brief. *See* ECF No. 89 ("Defs.' Reply"). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, Defendants' Motion is **GRANTED**.

## FACTUAL BACKGROUND

Plaintiffs in this putative class action seek damages from two automobile insurance companies that allegedly undervalued the total-loss claims of their insured vehicles. *See* Amended Complaint ("Am. Compl."), ECF No. 27, ¶¶ 1-2, 40-41, 44-45. Defendants are two Progressive subsidiaries—Drive New Jersey Insurance ("Drive NJ") and Progressive Garden State Insurance Company ("Garden State")—that offer auto insurance policies to New Jersey residents for first-party property damage under collision and/or comprehensive coverage. *Id.* ¶¶ 7-11. Plaintiffs

Kristin Petri and Sherzon Green[1] were insured under automobile insurance policies with Drive NJ and Garden State, respectively, when each experienced a "total loss" of her vehicle.[2] *Id.* ¶¶ 40-41, 44-45. Both Plaintiffs' policies provided that, in the event of a total loss, the insurance company would pay the actual cash value of the car. *Id.* ¶ 2. To determine the actual cash value, Defendants relied on a third-party vendor, Mitchell International, Inc. ("Mitchell"), to create a market valuation report based on several comparable vehicles listed for sale or recently sold online. *Id.* ¶ 17. According to Plaintiffs, Defendants "artificially decrease[d] the market value of the comparable vehicles [in the market valuation report]" by applying an arbitrary "projected sold adjustment" variable, thereby "decreas[ing] the amount Defendants [were] required to pay to their insureds" under the policies and New Jersey law. *Id.* ¶ 16.

The events giving rise to the Plaintiffs' claims occurred between 2017 and 2019. Plaintiff Petri owned a 2008 Lincoln MKZ sedan, which Drive NJ deemed a total loss on May 6, 2017. *Id.* ¶ 40. After Petri submitted a claim, Drive NJ obtained a market valuation report from its vendor, Mitchell. *Id.* ¶¶ 41-42 & Petri Vehicle Valuation Report ("Petri Valuation"), ECF No. 27-3, Ex. B. The report listed seven comparable vehicles and their actual sale prices. *Id.* ¶ 43 & Petri Valuation at 3. Plaintiffs allege, however, that before reaching its actual cash value determination, Drive NJ reduced the actual sale price of each comparable vehicle by 9-10% using a "projected sold adjustment" variable. *Id.* ¶ 43 & Petri Valuation at 5-8. According to the Amended Complaint, the market valuation report provided no basis for the application or size of the

---

[1] The First Amended Complaint lists Green's first name as Sherdon. *See, e.g.*, *id.* ¶ 8. As she explained in her deposition, Green's legal first name is Sherzon. Deposition Transcript of Plaintiff Sherzon Green ("Green Tr."), ECF No. 88-1, Ex. A, at 7:4-25. She used the name Sherdon to apply for her Garden State insurance policy because her license mistakenly lists her name as Sherdon Green. *Id.* Because Green's legal name is Sherzon Green, that is how the Court refers to her here.

[2] A total loss occurs when repair to a vehicle is impractical or uneconomical because the cost of the necessary repairs exceeds the car's market value. Am. Compl. ¶ 2.

"projected sold adjustment" factor.  *Id.* ¶ 43.  Based on the market valuation report, Drive NJ allegedly valued Petri's claim at $5,488.94 and paid Petri that amount.  *Id.*

Plaintiff Green leased her total-loss vehicle, a 2019 Range Rover, in March 2019.  *See* Green Tr. at 35:6-8; 38:10-13; 123:12-124:11; 152:21-23.[3]  Before Green executed the lease agreement, the dealership allegedly obtained two car insurance quotes from Garden State on Green's behalf for two different residential addresses:  (1) 1 William Street, Apartment 419, Englewood, New Jersey, which Green reported as her New Jersey address; and (2) 21 West 121st Street, New York, New York, Green's fiancé's address.  *Id.* at 12:2-5.  Green asserts that she requested a quote for each address because she did not yet know whether the car would be titled in her name or in her fiancé's name.  *Id.* at 153:10-17.  Ultimately, Green leased the car in her own name and initially insured it through GEICO.  *Id.* at 38:5-18.

On September 18, 2019, approximately six months into the lease, Green applied for car insurance with Garden State, listing only her Englewood, New Jersey address.  *Id.* at 37:13-38:16; *see also* Application for Insurance, ECF No. 75-2, Ex. B, at 1-2.  On October 19, 2019, while her fiancé was driving the vehicle in Virginia, a red light activated on the dashboard of Green's Range

---

[3] Both parties attached portions of Plaintiff Green's deposition transcript to their respective briefing on the Motion to Amend.  Defendants attached only those portions of the transcript upon which they relied.  *See* ECF No. 75-4, Ex. C.  Plaintiffs, however, attached the entire transcript to their opposition brief.  *See* ECF No. 88-1, Ex. A.  To provide a fulsome rendition of the factual background, the Court cites to the full transcript provided by Plaintiffs.

In addition, the Court finds that it may properly consider Green's deposition transcript on this Motion, and the parties do not contend otherwise.  To be sure, the Court may consider materials attached to a party's submissions related to a motion to amend a pleading when the attachments are "undisputedly authentic" and heavily relied upon to form the basis of the proposed Amendment.  *See Love v. Does*, No. 17-1036, 2020 WL 5760447, at *3 (D.N.J. Sept. 28, 2020) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)) ("In determining futility [of a proposed amendment], the Court considers only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon the same."); *see also Robert v. Autopart Int'l*, No. 14-7266, 2016 WL 492762, at *3 (D.N.J. Feb. 8, 2016) (same).

Rover.  Green Tr. at 29:3-13, 49:9-25.  Green also noticed "a weird smell." *Id.* at 46:22-47:3.  Green then brought the vehicle to a mechanic at the Range Rover dealership in Richmond, Virginia.  *Id.* at 28:13-21; 48:12-49:3.  Afterwards, a Garden State employee informed Green that a small pebble had entered the engine through the grill, causing extensive engine damage after hitting the fan.  *Id.* at 49:7-13.

On October 19, 2019, Garden State deemed the 2019 Range Rover a total loss.  Am. Compl. ¶ 44 & Green Vehicle Valuation Report ("Green Valuation"), ECF No. 27-3, Ex. C.  To substantiate its actual cash value determination, Garden State provided Green a market valuation report from Mitchell listing ten unique comparable vehicles.  *Id.* ¶¶ 46-47 & Green Valuation at 4.  According to Plaintiffs, the report noted the application of a "projected sold adjustment" variable, which inexplicably reduced the actual sale price of nine of the ten comparable vehicles by approximately 3-7% each.  *Id.* ¶ 47 & Green Valuation at 6-14.  Based on the market evaluation report, Garden State valued Green's claim at $77,996.06, and paid Green that amount.  *Id.* ¶ 47.

Plaintiffs assert that Defendants' evaluation methodologies are "arbitrary and capricious," conflict with the plain terms of their insurance contracts, and violate New Jersey law.  *Id.* ¶¶ 19-22, 29, 124, 130.  Defendants now move to Amend their Answer to the Amended Complaint to assert counterclaims against Green.  More specifically, Defendants seek to add the following counterclaims against Green because she allegedly falsified her residency on her auto policy application:  (1) violation of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1, *et seq.* ("the NJIFPA"), *id.* ¶¶ 26-29; (2) recession of the insurance policy, *id.* ¶¶ 31-36; (3) unjust enrichment, *id.* ¶¶ 37-40, and (4) breach of contract, *id.* ¶¶ 41-45.

## PROCEDURAL HISTORY

On December 15, 2021, Plaintiff Petri filed the initial Complaint in this action, which was amended once on March 7, 2022, to add Plaintiff Green.  *See* ECF Nos. 1, 27.  Plaintiffs bring claims for fraud under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*., Am. Compl. ¶¶ 58-91 (Counts I and II); breach of contract, *id.* ¶¶ 92-111 (Counts III and IV); and breach of the covenant of good faith and fair dealing, *id.* ¶¶ 112-125 (Counts V and VI).  Plaintiffs also request a declaratory judgment. *Id.* ¶¶ 126-137.  As relief, Plaintiffs seek monetary damages, costs, and reasonable attorneys' fees, *id.* at 31-32, as well as various forms of equitable relief.  *Id.* ¶¶ A-F (Prayer for Relief).[4]

On April 4, 2022, Defendants moved to dismiss the Amended Complaint for failure to state a claim under Rules 12(b)(6) and 9(b).  *See* ECF No. 32.  The Court granted the motion in part and dismissed Plaintiffs' claims based on the New Jersey Consumer Fraud Act (Counts I and II) and the covenant of good faith and fair dealing (Counts V and VI).  *See* Order of Dismissal, ECF No. 55.  As a result, only the breach of contract claims (Counts III and IV) remain.  *Id.*  On October 11, 2022, Defendants filed their Answer to the Amended Complaint.  *See* Defendants' Answer to the Amended Complaint ("Defs.' Answer"), ECF No. 57.  In it, Defendants averred that they lacked sufficient information to admit allegations that Green was a New Jersey resident when she obtained and held the Garden State insurance policy.  Defs.' Answer ¶ 8.

On October 25, 2022, the Court issued a Scheduling Order pursuant to Rule 16, and the case proceeded into discovery.  *See* Initial Scheduling Order, ECF No. 63.  That Order set January

---

[4] Plaintiffs also seek relief on behalf of two prospective Rule 23 subclasses:  (1) the "Drive New Jersey Class," which includes those who submitted a total-loss claim to Drive NJ and is represented by Plaintiff Petri, *id.* ¶¶ 48-49; and (2) the "Progressive Garden State Class," which is comprised of those who submitted a total-loss claim to Garden State and is represented by Plaintiff Green, *id.* ¶ 50.

20, 2023, as the deadline to amend the pleadings.  *Id.* ¶ 6.  Although the Court granted the parties'
subsequent request for an extension of the fact and expert discovery deadlines, *see* ECF Nos. 69,
71, neither party ever requested an extension of the deadline to amend the pleadings.

On July 21, 2023, defense counsel deposed Green.  Green Tr. at 1:12-16.  During that
deposition, defense counsel questioned Green about two online news articles, which in
Defendants' view, suggest that Green was a New York resident when she applied for and held the
Garden State policy.  The first article, published by the New York City Lens on March 5, 2019,
refers to Green as the president of the Mount Morris Park Association, an organization that
advocates on behalf of Harlem, New York residents.  New York City Lens Article ("NY Lens
Art."), ECF No. 75-5, Ex. D, at 1-2.  The second article, published by CBS News on November
14, 2020, refers to Green as a "Harlem resident," and quotes her on neighborhood conditions.  CBS
News New York Article ("CBS Art."), ECF No. 75-6, Ex. E, at 2.  When questioned about her
residency, Green consistently testified that she was a New Jersey resident at all relevant times.  *See*
Green Tr. at 9:24-10:11; 25:12-14; 153:8-9; 153:21-154:2; 157:25-158:5.  More specifically,
Green testified that she lived at 1 William Street, Apartment 419, Englewood, New Jersey with
her daughter and two grandchildren.  *Id.* at 153:8-154:21.  Green also explained that when she
leased the Range Rover, she spent a significant amount of time in New York City visiting her
fiancé; managing property she owned there; assisting her daughter with a day-care business; and
leading the Mount Morris Park Association.  *See, e.g.*, *id.* at 137:18-25; 158:10-25.

After completing Green's deposition, Defendants sought additional discovery to confirm
Green's address history.  On July 28, 2023, Defendants served a second Request for Production
on Green, which included two new requests: one for the Williams Street apartment lease and
another for "all documents related to the garaging or parking of the [total-loss vehicle.]"  Defs.'

Second Request for Production to Pl. Green ("Second RFP"), ECF No. 75-8, Ex. G., ¶¶ 37-38. That same day, Defendants served a subpoena on UDR, Inc. ("UDR"), the property management company responsible for the William Street apartment complex, seeking a copy of the lease and any relevant parking agreements.  July Subpoena to UDR, Inc., ECF No. 75-7, Ex. F.

On September 5, 2023, Green responded to Defendants' second set of document requests. Green's Resp. to Second RFP, ECF No. 75-11, Ex. J, at 4.  As to both the leasing and parking requests, Green responded that she had no responsive documents within her possession, custody, or control.  *Id.* ¶¶ 37-38.

One week later, on September 13, 2023, UDR responded to the subpoena and provided the applicable lease document along with the affidavit of Josh Lefkowitz, custodian of records for UDR.  Affidavit of Josh Lefkowitz ("Lefkowitz Aff."), ECF No. 75-9, Ex. H, ¶¶ 1-2.  Mr. Lefkowitz stated that UDR did not have any record of Green ever living at the William Street complex.  Lefkowitz Aff. ¶ 3.  Mr. Lefkowitz also attached a copy of the lease for 1 Williams Street Apartment 419 during the relevant period, from October 31, 2018, to November 30, 2019. *Id.* ¶ 4.  The lease lists only Green's daughter and her two minor children as occupants.  *Id.* ¶¶ 3-5.  The lease does not mention Green.  *Id.*

On September 15, 2023, nearly nine months after the Court-imposed deadline to amend the pleadings, Defendants filed the present Motion seeking leave to add counterclaims against Green by way of an amended answer.  Proposed Am. Answer & Countercl., ECF No. 75-1, Ex. A. More specifically, Defendants allege that Green was a New York resident when she applied for the Garden State policy and therefore falsified her insurance application by providing a New Jersey address.  *Id.* ¶¶ 15, 23.  Because the payout of any claims was conditioned upon Green providing

accurate information in her application, Defendants argue that she was not entitled to payment of her total-loss claim. *Id.* ¶¶ 22, 24-25.

Defendants seek leave to add four counterclaims against Green: (1) violation of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1, *et seq.*, *id.* ¶¶ 26-29; (2) recession of the insurance policy, *id.* ¶¶ 31-36; (3) unjust enrichment, *id.* ¶¶ 37-40, and (4) breach of contract, *id.* ¶¶ 41-45. On October 23, 2023, Plaintiffs filed a brief opposing Defendants' Motion. *See* ECF No. 88. They challenge the proposed amendment as deficient under both the Rule 16 good cause standard and the more permissive Rule 15 standard. Pls.' Opp. at 2-3. On October 30, 2023, Defendants filed a reply brief. *See* ECF No. 89. Defendants contend that the proposed amendment comports with both Rule 16 and Rule 15. Defs.' Reply at 3, 5. Having been fully briefed, this motion is now ripe for disposition.

## **DISCUSSION**

"'The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure.'" *Sabatino v. Union Twp.*, No. 11-1656, 2013 WL 1622306, at *2 (D.N.J. Apr. 15, 2013) (quotation omitted).

> [W]hen a party moves to amend or add a party after the deadline in a . . . scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies. A party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard.

*Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); *see also Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005) (adopting a good cause standard to determine whether leave to amend should be granted after the deadline has expired); *Lasermaster Int'l Inc. v. Neth. Ins. Co.*, No. 15-7614, 2018 WL 1891474, at *3 (D.N.J. Apr. 20, 2018) (second alteration in original) (quotation omitted) ("[W]here a party seeks to amend 'after the deadline for doing so set by the Court, the movant must satisfy the [good cause standard] of

Rule 16 before the Court will turn to Rule 15.'"), *aff'd*, 2021 WL 3616197 (D.N.J. Aug. 13, 2021).

Here, Defendants filed the present Motion almost nine months after the January 20, 2023 deadline

set by the Court for doing so.  *See* Initial Scheduling Order ¶ 6.  As such, Defendants must satisfy

both the Rule 16 good cause standard and the more liberal Rule 15 standard before the Court can

grant leave to amend.

In addition, Defendants here argue that their proposed counterclaims against Green are

compulsory under Rule 13(a); therefore, denying them the opportunity to amend would extinguish

their rights to bring the claims at all.  Defs.' Mot. at 10.  Plaintiffs, for their part, do not controvert

that view.  *See generally* Pls.' Opp.  Under Rule 13, "[a] pleading must state as a counterclaim any

claim that . . . (A) arises out of the transaction or occurrence that is the subject matter of the

opposing party's claim; and (B) does not require adding another party over whom the court cannot

acquire jurisdiction."  Fed. R. Civ. P. 13(a).  The Court remains mindful that "the Federal Rules .

. . accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."

*Forman v. Davis*, 371 U.S. 178, 181-82 (1962).  Accordingly, "[c]ourts should deny the addition

of compulsory counterclaims only when their reasons for doing so are compelling—because 'an

omitted compulsory counterclaim cannot be asserted in subsequent cases and the pleader will lose

the opportunity to have the claim adjudicated.'"  *Live Face on the Web, LLC v. Control Grp. Media

Co.*, No. 15-1306, 2016 WL 3476265, at *2 (E.D. Pa. June 27, 2016) (quoting *Perfect Plastics

Indus., Inc. v. Cars & Concepts, Inc.*, 758 F. Supp. 1080, 1082 (W.D. Pa. 1991)).

For the purposes of deciding the present Motion, the Court treats the proposed

counterclaims as compulsory under Rule 13.  That is because the claims and counterclaims arise

out of the same transaction or occurrence:  Green's recovery from Garden State on her total-loss

vehicle.  Also, the counterclaims do not involve joinder of any other party.  Accordingly, the Court cannot deny leave to amend without a compelling justification.

## A.   <u>Good Cause Supports the Proposed Amendment Under Rule 16.</u>

Plaintiffs argue that there is no good cause for the amendment because Defendants "fail[ed] to act with due diligence" in bringing this Motion.  Pls.' Opp. at 9.  More specifically, Plaintiffs assert that Defendants had access to the evidence supporting the counterclaims—publicly available news articles published in 2019 and 2020 and Plaintiff Green's insurance applications—since Green joined this action in March 2022.  *Id.* at 10.  Plaintiffs further argue that Defendants were negligent in not confirming Green's address by directly asking for it in their initial discovery requests.  *Id.* at 12.  In Plaintiffs' view, Defendants chose to sit on the potential counterclaims for nine months after the deadline to amend the pleadings expired before requesting leave to amend. *Id.* at 9-10.[5]

For their part, Defendants argue the amendment is supported by good cause because the counterclaims are based on a new set of facts, one which Defendants only discovered through the exercise of due diligence.  Defs.' Mot. at 8-9.  Defendants assert that they "did not fully confirm the extent of Green's misrepresentation until September 5, 2023," when UDR produced the lease for the New Jersey apartment.  *Id.*  In support, they note that their Answer states that they did not have enough information to confirm Green's address.  *Id.*  Finally, Defendants argue that Green contributed to the delay in bringing the counterclaims because she did not perform an adequate search for documents in response to Defendants' initial discovery requests.  Defs.' Reply at 5 & n.1.

---

[5]  Plaintiffs also argue that Defendants have not established good cause for the amendment because the counterclaims are substantively deficient.  *Id.* at 10-11.  Because the good cause standard focuses on the movant's diligence and not the strengths of its proposed claims, the Court finds this argument immaterial to the good cause analysis.

Here, Defendants must establish "good cause" for the modification of a court's scheduling order.  Fed. R. Civ. P. 16(b)(4).  The focus of the good cause analysis is on the diligence, or lack thereof, of the moving party.  *Tordella v. Cnty. of Cape May, Bd. of Chosen Freeholders*, No. 18-15101, 2021 WL 3562895, at *2 (D.N.J. Aug. 12, 2021) (citations omitted); *Sabatino*, 2013 WL 1622306, at *4.  To make the good cause determination, the court should "'consider whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend'" before the deadline elapsed.  *Ewing v. Cumberland Cnty.*, No. 09-5432, 2014 WL 3974159, at *4 (D.N.J. July 16, 2014) (quoting *Siebel v. Work At Home Vintage Emps., LLC*, Nos. 12-1199, 12-1210, 2013 WL 6094558, at *3 (D.N.J. Nov. 18, 2013)); *GlobespanVirata, Inc. v. Tex. Instruments, Inc.*, No. 03-2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (citations omitted) (stating that the moving party "must show that the deadlines [could not] be reasonably met despite its diligence").

On the one hand, good cause exists to add a counterclaim or defense when subsequent discovery provides factual material not reasonably available to the movant when the applicable scheduling deadline expired.  *Marlowe Pat. Holdings LLC v. Dice Elecs., LLC*, 293 F.R.D. 688, 692-93, 696 (D.N.J. 2013).  In *Marlowe Patent Holdings*, the defendants to a patent infringement suit moved to amend the answer to add a counterclaim based on the recent discovery of certain prior art.  *Id.* at 692.  The defendants argued there was good cause for the amendment because they informed both opposing counsel and the court of their intent to add the defense within a week of first receiving the necessary supporting facts from third-party productions and deposition testimony.  *Id.* at 692-93.  The court agreed, and rejected the plaintiff's argument that the newly discovered information was available from other sources when the amendment deadline expired.  *Id.* at 696.  Because the defendants were diligent under the circumstances, the court found good

cause for the amendment under Rule 16.  *Id.*; *see Scranton Prods., Inc. v. Bobrick Washroom Equip., Inc.*, No. 14-853, 2016 WL 7330580, at *3 & n.2 (M.D. Pa. Dec. 16, 2016) (finding good cause for adding a counterclaim out of time when the delay was caused in part by the opposing party's failure to provide timely and fulsome responses to discovery requests).

On the other hand, good cause does not exist when a movant possessed sufficient factual material to bring the claim or defense in time but chose to wait to confirm those facts by deposition testimony.  Plaintiff cites *Intellectual Ventures I LLC v. Check Point Software Technologies, Ltd.*, 215 F. Supp. 3d 314 (D. Del. 2014) for that proposition and as analogous to this case.  Pls.' Opp. at 12.  There, the defendant moved to amend its answer to include an antitrust defense to patent enforcement based on newly discovered conduct of the plaintiff.  *Intell. Ventures I LLC*, 215 F. Supp. 3d at 340-41.  The court disagreed, noting that the defendant became aware of the facts undergirding the newly pled defense through information that was publicly available for years before the start of litigation and via other documents obtained five months before the amendment deadline.  *Id.* at 341.  The defendant argued that, although documents discovered well in advance of the deadline to amend supported the newly-asserted defense, it needed to wait to confirm those facts through deposition testimony before altering its relevant pleading.  *Id.* at 341 & n.25.  The court rejected that argument and denied the defendant's motion.  *Id.* at 341.  The court reasoned that there was no need to wait for the deposition testimony because the defendant could have "gathered sufficient facts and evidence to support its antitrust claims prior to the pleadings amendment deadline."  *Id.* at 341 & n.25.

Here, the Court finds that Defendants have met the good cause standard.  First, the information in the NY Lens and CBS News articles likely was insufficient to assert the counterclaims at issue.  The publicly available documents at issue in *Intellectual Ventures I LLC*

contained all facts necessary to bring a plausible claim, while here, the relevant articles did not contain sufficient information to displace Green's assertion in the Amended Complaint that she lived in New Jersey.  Indeed, Defendants answered the Amended Complaint by stating that they lacked sufficient information to admit Green's New Jersey address.  *See* Defs.' Answer ¶ 8.

Second, the Court finds that Green may have contributed to the delay by failing to conduct a reasonable search for documents responsive to Defendants' discovery requests.  Defendants' first request for production served on Green requested documents that would have confirmed Green's address history, such as documentation from any vehicle purchase or lease in the past ten years.  Green Tr. 164:23-165:2.  Green responded that she had no such documents in her custody, control, or possession.  *See id.* at 165:3-25.  Defendants first learned at Green's deposition that her search for documents in response to their initial discovery requests may have been deficient.  *See id.* at 164:4-7 ("Q: What did you do to search for documents responsive to Progressive's request? A: I haven't done anything.  My attorneys—I'm sorry.  I apologize.").  Only then did Defendants have reason to send a second request for production and issue a subpoena to the leasing company for the New Jersey apartment, which it did nine days after Green's deposition.  Defendants acted quickly after receiving responsive documents from the leasing company, filing the present Motion just two days later.  The Court finds that Defendants did not have sufficient information to bring their counterclaims until after they received documents responsive to their subpoena and second requests for production.  Moreover, Green may have contributed to the delay by failing to conduct a diligent inspection for documents before responding to discovery requests.  *See Scranton Prods., Inc.*, 2016 WL 7330580, at *3 n.2.  As such, the Court finds that good cause exists to modify the scheduling order.

**B.**     **Defendants' Proposed Amendment Is Permissible Under Rule 15.**

Having found good cause to modify the scheduling order, the Court now turns to Rule 15. Under that rule, a party may amend its pleading once as a matter of course within either 21 days after serving it; or if the pleading is one to which a responsive pleading is required, the earlier of 21 days after service of a responsive pleading or 21 days after a motion under Rule 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1).  If those deadlines have expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires."  *Id*.; *see also Forman*, 371 U.S. at 182.

The Third Circuit has adopted a liberal approach to the amendment of pleadings.  *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019); *see also Donovan v. W. R. Berkley Corp.*, 566 F. Supp. 3d 224, 229 (D.N.J. 2021) ("Generally, there is a presumption in allowing the moving party to amend its pleadings.").  However, the Court may deny a motion for leave to amend when: (1) the amendment would be futile; (2) the moving party has demonstrated undue delay, bad faith, or dilatory motives; (3) the amendment would prejudice the non-moving party; or (4) the moving party was put on notice of deficiencies in its pleading but chose not to resolve them.  *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014).  Ultimately, the decision whether to grant leave to amend is within the Court's discretion.  *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

Here, Plaintiffs argue that the Court should reject the proposed amendment on the basis of futility, undue prejudice, and delay.[6]  The Court addresses each of these arguments in turn.

---

[6]  Plaintiffs contend that Defendants filed the present motion to amend with the goal of "throw[ing] a wrench in the class certification analysis."  Pls.' Opp. at 2 n.1.  Aside from this statement, Plaintiffs have not argued to the Court that Defendants' amendment should be denied on the basis of bad faith.  *See generally* Pls.' Opp.  Furthermore, Plaintiffs argue that if the

14

### 1. Futility

Defendants' proposed counterclaims are founded on evidence that Green falsified her address on her Garden State insurance application.  Plaintiffs first argue that the proposed amendment is "implausible on its face and therefore futile" because the record undermines the factual predicate of the proposed counterclaims.  Pls.' Opp. at 15.  More specifically, Plaintiffs assert that Green did not falsify her address on her Garden State auto insurance application, as evidenced by her consistent testimony to the contrary.  Pls.' Opp. at 15-16.  Plaintiffs further argue that, notwithstanding Defendants' evidence, a person such as Green may have more than one residence.  *Id.* at 17.  The Court is not persuaded by these arguments.

In this context, futility means that the counterclaims, as pleaded in the proposed amendment, would fail to state a claim upon which relief could be granted.  *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *Con't Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 613, 622-27 (D. Del. 2014) (applying this standard to analyze whether a motion to amend counterclaims was futile); *Bristol–Myers Squibb Co. v. Immunex Corp.*, 84 F. Supp. 2d 574, 576-78 (D.N.J. 2000) (same).  Accordingly, the futility of an amended pleading is governed by the same standards of legal sufficiency as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010).  Under those standards, a court must accept all factual allegations in a proposed amendment as true and view them in the light most favorable to the movant.  *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022).  The burden of establishing futility is on the party opposing the amendment.  *Anderson v. Salerno*, No. 19-19926, 2021 WL 11585763, at *2 (D.N.J. Jan. 8, 2021) (quoting *Pharm. Sales & Consulting*

---

amendment is granted, and it "impact[s] the typicality of Plaintiff Green's claims," Plaintiffs are prepared to substitute additional Garden State insureds as class representatives. Pls.' Opp. at 2 n.1. The Court does not address the substitution issue on this motion because it is not properly before the Court and it would be premature.

*Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000)) ("The Court notes that . . . 'given the liberal standard applied to the amendment of pleadings,' th[e] burden [to establish futility] is a 'heavy' one.").

Although a counterclaim need not contain detailed factual allegations, "a [party's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Moreover, a pleading must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." *Harrison Beverage Co. v. Dribeck Imps., Inc*., 133 F.R.D. 463, 468-69 (D.N.J. 1990) (quoting 6 Wright, Miller & Kane, *Federal Practice & Procedure* § 1487 at 637-42 (2d ed. 1990) (footnotes omitted)). Because the proposed counterclaims state a plausible entitlement to relief as to each count, the Court finds that the proposed amendment is not futile.

### i.  NJIFPA Claims

The purpose of the NJIFPA was "to confront aggressively the problem of insurance fraud . . . [by] requiring the restitution of fraudulently obtained insurance benefits." N.J.S.A. 17:33A-2. The law makes it unlawful to provide:

> any written or oral statement, intended to be presented to any insurance company . . . for the purpose of obtaining:  (a) a motor vehicle insurance policy, that the person to be insured maintains a principal residence in [New Jersey] when, in fact, that person's principal residence is in a state other than [New Jersey][.]

N.J.S.A. 17:33A-4(a)(4). To withstand a motion to dismiss, an NJIFPA claim must state facts that plausibly establish three elements: (1) knowledge, (2) falsity, and (3) materiality. *Horizon Blue*

*Cross Blue Shield of N.J. v. Focus Express Mail Pharmacy, Inc.*, No. 17-571, 2017 WL 3588195, at *4 (D.N.J. Aug. 17, 2017) (citation omitted).  Plaintiffs need not plead intent to deceive.  *Id.*; *Horizon Blue Cross Blue Shield of N.J. v. Transition Recovery Program*, No. 10-3197, 2015 WL 8345537, at *4 (D.N.J. Dec. 8, 2015) (citing *Lincoln Nat'l Life Ins. Co. v. Schwarz*, No. 09-3361, 2010 WL 3283550, at *16 (D.N.J. Aug. 18, 2010)); *see Liberty Mut. Ins. Co. v. Land*, 186 N.J. 163, 174-75 (2006).  "The New Jersey Supreme Court has also held that '[courts] must construe the [IFPA]'s provisions liberally to accomplish the Legislature's broad remedial goals.'"  *Lincoln Nat'l Life Ins. Co.*, 2010 WL 3283550, at *16 (second alteration in original) (quoting *Land*, 186 N.J. at 173-74).

Plaintiffs argue that Defendants fail to plausibly plead the element of falsity.  Pls.' Opp at 16-17.  Plaintiffs assert that because Green's testimony establishes that she was a resident of New Jersey at all relevant times,  Defendants cannot plausibly plead falsity.  *Id.* at 16.  Plaintiffs further argue that Defendants cannot establish falsity because a person may have more than one residence. *Id.* at 17.

Here, under the liberal plausibility standard of Rule 12(b)(6), the Court is required to accept all factual allegations in the proposed amendment as true and view them in the light most favorable to Defendants.  *See Doe*, 30 F.4th at 340.  Defendants allege that "Plaintiff Green represented to Progressive in her insurance application that she lived in an apartment in Englewood, New Jersey with her daughter, when she actually lived in New York, New York."  Proposed Am. Answer ¶ 2. They further allege that "Plaintiff Green had full knowledge of her correct address at the time she made the false statement to Progressive."  *Id.* ¶ 33.  Based on the news articles proffered during Green's deposition, Green's first application for insurance, and the Williams Street lease documents, those facts offer plausible support for a claim under the NJIFPA.

In addition, the Court finds that the amendment should be permitted because it includes what are likely compulsory counterclaims under Rule 13(a). Denying Defendants' Motion could result in those related claims being barred in any and all subsequent litigation. Furthermore, it is generally inappropriate for courts to dispose of NJIFPA claims before trial when the parties dispute falsity. *See Merling v. Horizon Blue Cross Blue Shield of N.J.*, No. 04-4026, 2009 WL 2382319, at *13 (D.N.J. July 31, 2009) ("[T]here also remains dispute of fact as to whether plaintiffs knew that [the relevant procedure] was not eligible for coverage . . . . Thus, summary judgment on [falsity] ground[s] is inappropriate."). For these reasons, the Court finds that Plaintiffs have not established that Defendants' proposed NJIFPA claim is futile.

### ii. Remaining Claims

Plaintiffs argue that the remaining counterclaims are deficient because "all four causes of action are based on the same disproven allegations that [Green] misrepresented her residence on her insurance application[.]" Pls.' Opp. at 18. Having found that the amended answer is not futile under the applicable Rule 12(b)(6) standard as to Defendants' NJIFPA claim, the Court similarly rejects these arguments as they pertain to Defendants' other proposed counterclaims.

Finally, Plaintiffs argue that Defendants' proposed unjust enrichment counterclaim (Count III) is futile because an adequate remedy at law—expectation damages for breach of contract—exists. *Id.* at 19. Defendants respond that they are entitled to plead alternative theories of relief, including unjust enrichment and breach of contract, particularly when the existence of a valid contract is in dispute, as it is here. Defs.' Reply at 9. The Court agrees.

"Since unjust enrichment is 'not an independent theory of liability, but is the basis for a claim of quasi-contract liability,' [a party] may not recover on both a breach of contract claim and an unjust enrichment claim." *Mendez v. Avis Budget Grp., Inc.*, No. 11-6537, 2012 WL 1224708,

at *7 (D.N.J. Apr. 10, 2012) (quoting *Goldsmith v. Camden Cnty. Surrogate's Off.*, 408 N.J. Super. 376, 382 (App. Div. 2009)).  However, the Federal Rules of Civil Procedure provide that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones" and that "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2).  In addition, "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).  Courts regularly find that a party may plead unjust enrichment and breach of contract in the alternative so long as the validity of the governing agreement is disputed.  *See, e.g.*, *DeFrank v. Samsung Elecs. Am., Inc.*, No. 19-21401, 2020 WL 6269277, at *21 (D.N.J. Oct. 26, 2020) (allowing alternative pleading of unjust enrichment and breach of contract claims when the parties disputed whether a warranty was unconscionable and therefore, unenforceable); *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 & n.8 (3d Cir. 2014) (citations omitted) (finding that "pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy"); *Mendez*, 2012 WL 1224708, at *8 (permitting plaintiff to maintain alternative legal theories for breach of contract and unjust enrichment).

Here, the parties dispute the existence of a valid contract.  Plaintiffs' claim for compensation is predicated in the first instance upon the existence of a valid agreement between Green and Garden State.  Defendants allege that no such contract existed because the insurance company's performance was conditioned on Green providing truthful residency information in her application.  Proposed Am. Answer ¶ 25 & Insurance Agreement, Ex. C, at 50 ("[Defendant Garden State] will not provide coverage, and may void this policy at any time if you . . . made incorrect statements or representations to us with regard to any material fact or circumstance").

Accordingly, the Court finds that Defendants may plead both unjust enrichment and breach of contract theories in the alternative.  The proposed amendment is not futile as to this counterclaim.

### 2.  Undue Delay

Next, Plaintiffs argue that allowing the amendment would require the re-opening of discovery, or would unnecessarily increase the cost of litigation, which would place a burden on the Court.  Pls.' Opp. at 13-14.  In response, Defendants rely on their arguments under the good cause standard; namely, that they were diligent in bringing the counterclaims once they became aware of the relevant supporting facts.  Defs.' Reply at 6-7.

"The mere passage of time does not require that a motion to amend . . . be denied on grounds of delay.  In fact, delay alone is an insufficient ground to deny leave to amend." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citations omitted).  A delay becomes undue when it places an "unwarranted burden on the court." *Id.*; *see also Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) ("[D]elay that is 'undue'—a delay that is protracted and unjustified—can place a burden on the court or counterparty, or can indicate a lack of diligence sufficient to justify a discretionary denial of leave.").  The issue of undue delay requires focusing on the moving party's motives for not amending its pleading earlier. *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).  A motion for leave to amend may be denied if the moving party can offer "'no cogent reason'" for its delay in seeking the amendment. *Mullin*, 875 F.3d at 151 (quoting *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 629 (3d Cir. 2013)).

The Court finds that Defendants have offered a cogent reason for the delay; that is, confirmation of the underlying facts via multiple rounds of discovery, which were delayed in part by Green's insufficient search for documents responsive to Defendants' initial requests.  Furthermore, any additional discovery necessitated by this amendment would be limited to the

issue of Green's address history—an issue that was probably going to be litigated even without addition of the counterclaims.  That is because the existence of a valid insurance agreement—a necessary predicate to Plaintiffs' claims—turns on the accuracy of the information provided in Green's insurance application.  Simply put, a finding that Green falsified her address on the insurance application would simultaneously provide an absolute defense to liability and serve to support Defendants' proposed counterclaims.  Plaintiffs were put on notice of the possible contract-validity defense when Defendants served their Answer to the Amended Compliant, which stated that Defendants could not confirm Green's residency.  Answer ¶ 8.  Accordingly, the fact that further discovery may be warranted is unsurprising.  *See Perfect Plastics Indus., Inc.*, 758 F. Supp. at 1082 (finding no undue delay when "the questions raised by the [newly-added] counterclaims would, in any event, be litigated in the action as defenses.").  In addition, the need for minimal additional discovery is not a compelling justification to prevent Defendants from bringing what are likely compulsory counterclaims.  As such, the Court finds that any delay resulting from the amendment is justified; will not place an unwarranted burden on the Court; and does not support denying the addition of what may be compulsory counterclaims.

### 3. Prejudice

Turning to prejudice, Plaintiffs argue that the amendment should be denied because Defendants are attempting to "change tactics or case theories" by way of the amendment, and that the amendment will delay resolution and increase costs.  Pls.' Opp. at 14 (citation and quotation marks omitted).  Defendants respond that the amendment would result in little prejudice because "the very premise of Plaintiff Green's lawsuit is that Progressive should have paid even more money" and, "[a]s a result, it is entirely appropriate that the question of Plaintiff Green's

entitlement to any benefits be litigated in this forum." Defs.' Mot. at 10 (citing *Forman*, 371 U.S. at 181-82).

"It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell & Co. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) (citations omitted). "In evaluating the extent of prejudice, courts may inquire into the hardship to the non-moving party if leave to amend is denied." *Id*. Courts specifically consider whether an amended pleading would result in additional discovery, cost, or preparation to defend against new facts or theories. *Cureton*, 252 F.3d at 273; *see also Briscoe v. Klaus*, 538 F.3d 252, 259 (3d Cir. 2008) (quoting *Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994)) ("Generally, prejudice includes 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'"). Merely "incidental prejudice" is an insufficient ground on which to deny leave to amend. *In re Caterpillar Inc.*, 67 F. Supp. 3d 663, 668 (D.N.J. 2014).

Plaintiffs cite to *Stallings ex rel. Estate of Stallings v. IBM Corp.*, No. 08-3121, 2009 WL 2905471 (D.N.J. Sept. 8, 2009) for the proposition that the Court may reject an amendment on prejudice grounds when the pleading represents a change in tactics or case theories. In *Stallings*, the plaintiff moved to amend her complaint to add state law claims related to the denial of sickness and accident benefits to her long-term disability claim. 2009 WL 2905471, at *15. The court denied the motion because the defendant would be significantly prejudiced by the amendment. *Id.* at * 17. More specifically, the defendant had conducted discovery solely on the plaintiff's long-term disability claim and therefore, "the new claims [would] deprive [the defendant] of the opportunity to develop defenses to the new claims." *Id.*

Those same concerns are absent here.  As previously discussed, Green's claim is predicated on Garden State's obligation to pay her total-loss claim.  That requires proof that each condition of the contract—including the truth of the address listed—was satisfied.  In other words, the same facts that establish Defendants' liability also establish the validity of Defendants' proposed counterclaims.  Therefore, here, unlike in *Stallings*, the addition of the proposed counterclaims does not change the scope of the issues to be litigated in the case.  And although discovery in this matter has closed, any additional discovery would be limited to the narrow issue of Green's address and would not unduly increase litigation costs.  The Court finds that at most, the amendment results only in "incidental prejudice," which is insufficient to deny Defendants' Motion, especially where, as here, the movant seeks to add what are likely compulsory counterclaims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for leave to file an Amended Answer is **GRANTED**.  An appropriate Order follows.

s/ Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc:  Hon. Christine P. O'Hearn, U.S.D.J.